# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| AM/NS CALVERT LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 21-00005 |
| UNITED STATES, | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff AM/NS Calvert LLC ("Calvert" or "Plaintiff"), by and through its counsel, alleges and states as follows:

## NATURE OF THE ACTION

1.     This action concerns Defendant's unlawful processing and denial of requests for exclusion ("exclusion requests") from tariffs imposed under Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862) ("Section 232").  This Complaint focuses on Defendant's unlawful denial of exclusion requests filed by Calvert, described below.

2.     Section 232 authorizes the President to take action against imports following an investigation that properly concludes that the imports in question are being brought into the United States "in such quantities or under such circumstances as to threaten to impair the national security."  19 U.S.C. § 1862(c)(1)(A).

3.     In March 2018, President Donald J. Trump, acting pursuant to Section 232, issued Presidential Proclamation 9705, which imposed a 25 percent ad valorem tariff on certain imports of steel products ("Section 232 tariffs").  See Adjusting Imports of Steel into the United States, Pres. Proc. No. 9705, 83 Fed. Reg. 11,625 (Dep't Commerce Mar. 8, 2018) ("Proclamation 9705").

While imports from Canada and Mexico were initially excluded from those tariffs, the President subsequently issued Proclamation 9740, which established that without further action by the President, Section 232 tariffs would also apply to imports of steel articles from Canada and Mexico beginning June 1, 2018. See Adjusting Imports of Steel into the United States, Pres. Proc. 9740, 83 Fed. Reg. 20,683, 20,684 (Dep't Commerce May 7, 2018). No such action was taken until May 19, 2019, when the President issued a proclamation announcing the conclusion of agreements with Canada and Mexico and exempted imports of steel articles from those countries as of May 20, 2019. See Adjusting Imports of Steel into the United States, Pres. Proc. No. 9893,.84 Fed. Reg. 23,983 (Dep't Commerce May 23, 2019). As a result, imports of steel articles from Canada and Mexico were subject to Section 232 tariffs from June 1, 2018 to May 20, 2019.

4. According to the President, the tariffs were intended to "help our domestic steel industry, to revive idled facilities, open closed mills, preserve necessary skills by hiring new steel workers, and maintain or increase production." Proclamation 9705, 83 Fed. Reg. at 11,626.

5. Proclamation 9705 also instructed the U.S. Department of Commerce (the "Department") to provide relief from the Section 232 tariffs for steel products "determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality," or based upon "specific national security considerations." Id., 83 Fed. Reg. at 11,627.

6. Pursuant to Proclamation 9705, the Department developed a product exclusion process through which the agency would grant interested parties an exclusion from the Section 232 tariffs for imports of products not "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or based upon specific national security considerations." Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and

Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum, 83 Fed. Reg. 12,106, 12,110 (Dep't Commerce Mar. 19, 2018) ("Interim Rule"); see also Submission of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026 (Dep't Commerce Sept. 11, 2018) ("Revised Interim Final Rule").

7.      According to the Department, the purpose of creating this product exclusion process was to:

> protect downstream manufacturers that rely on products not produced by U.S. domestic industry at this time.  The guiding principle is that, if U.S. domestic industry does not or will not produce a given steel or aluminum product of the quality needed by users in the United States, companies that rely on those products will not pay duties on them.

Revised Interim Final Rule, 83 Fed. Reg. at 46,038-39.

8.      Plaintiff commences this action to challenge the Department's wrongful denials of Plaintiff's requests for exclusion from the Section 232 tariffs for non-alloy and alloy steel slabs, and to recover millions of dollars in tariffs paid on those slab imports for which the Department should have granted exclusions.

9.      Calvert is a domestic producer of flat-rolled steel products and a 50/50 joint venture between ArcelorMittal and Nippon Steel & Sumitomo Metal Corp. ("NSSMC").  It operates a state-of-the-art steel processing plant located in Calvert, Alabama.  Calvert's facility produces high quality hot-rolled steel coils for large diameter line pipe used in critical infrastructure projects that promote America's development of its energy resources.  Calvert also produces steel end-products serving the automotive, construction, pipe and tube, service center, and appliance/HVAC industries.  As the second-largest industrial employer in the state of Alabama, supporting over 1,600 direct employees and an additional 300 onsite contractors, Calvert is vital to the economic

well-being of the region. Calvert continues to invest in its business and has made significant capital expenditures.

10.     Calvert requires slabs from outside sources to operate its rolling mills because Calvert's processing plant lacks steel melting capacity. To produce these critical steel products, Calvert requires a reliable and consistent supply of high-quality non-alloy and alloy steel slabs. Because non-alloy and alloy steel slabs are not available in the U.S. market in the quality and quantities that Calvert requires, Plaintiff imports the remainder of its slab requirements that cannot be met by domestic sources.

11.     Calvert filed twelve exclusion requests for alloy and non-alloy steel slabs of varying thicknesses and widths from Mexico. Six of the exclusion requests (covering alloy steel slabs of varying widths) were filed on June 18, 2018, and six exclusion requests (covering nonalloy steel slabs of varying widths) were filed on July 26, 2018. For each of the requests, Calvert demonstrated that the requested steel slab was not reasonably available in the United States in the quality and quantity required.

12.     Three U.S. steel producers – United States Steel Corporation ("U.S. Steel"), Nucor Corporation ("Nucor"), and AK Steel Corporation ("AK Steel") – each filed objections to each of Calvert's exclusion requests. In their objections, U.S. Steel and AK Steel asserted, but failed to demonstrate with evidence, that they could produce the requested steel slab in the quality and quantity Calvert requires and within the eight-week time period set forth in the regulations. Nucor did not claim it could produce slabs in sufficient quantity or quality as required by the Department's regulations but objected to Calvert's exclusion request on "policy" grounds, arguing it could produce different downstream flat-rolled products. Calvert rebutted each objection and

identified evidence establishing the lack of availability of domestic steel slabs in sufficient and reasonably available quantities and of satisfactory quality.

13. On April 24, 2019 (one decision) and May 8, 2019 (11 decisions), nearly one year after filing the exclusion requests, the Department denied each of Calvert's exclusion requests with cursory, and nearly identical, decision memoranda. In doing so, the Department issued boilerplate denials, asserting that there was sufficient quantity of alloy and non-alloy steel slab of satisfactory quality reasonably available from domestic sources. The Department cited to no record evidence to support its conclusions, but in each case referenced International Trade Administration ("ITA") analysis memoranda that were not provided on the public record and were not disclosed to Calvert. Commerce also denied two exclusion requests based on advice from U.S. Customs and Border Protection ("CBP") that the proportion between width and thickness specified in the exclusion requests was inconsistent with the HTSUS codes under which each exclusion was sought.

14. As a result of the denial of these exclusion requests, Calvert has paid millions of dollars in duties on imports of alloy and non-alloy steel slabs covered by the exclusion requests.

15. Commerce's failure to (i) verify the veracity and applicability of the objectors' claims; (ii) consider the evidence provided by Calvert that these companies are unable and/or unwilling to produce the subject products in the required quality or quantity within the time period set forth in the regulations; (iii) examine the evidence that a particular national security concern would be served in granting Calvert's exclusion requests; and (iv) provide any reasoned explanation of the basis for its denial of Calvert's exclusion requests is arbitrary, capricious, and an abuse of discretion, in violation of the Administrative Procedures Act. See 5 U.S.C. §§ 701 et seq.

## JURISDICTION

16.    The Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(i).   Section 1581 confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . .  tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," id. at § 1581(i)(1)(B), and "administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section." Id. at § 1581(i)(1)(D).

## PARTIES

17.    Plaintiff Calvert, located in Calvert, Alabama, imports steel slab from Mexico as part of an established conversion program in which Calvert rolls slabs produced by ArcelorMittal Mexico into hot-bands for re-exportation to Mexico and to supplement its domestic slab purchases. Calvert has made numerous customs entries and paid the applicable Section 232 tariffs on the products identified in **Table 1** to this Complaint, which provides a listing of Calvert's exclusion requests and the products covered by the requests.

18.    Calvert is deeply committed to the U.S. steelmaking industry and supports the President's decision to grant relief under Section 232 to the domestic steel industry from the increase in imports caused by the global over-capacity of steel that threatens the health of the domestic steel industry and the security of the nation.  In addition to producing highly advanced products for use in critical infrastructure projects and serving a wide variety of industries, Calvert currently employs over 1,600 employees at its Calvert, Alabama facility as well as supports jobs in Mobile, Alabama and surrounding areas.  On August 12, 2020, ArcelorMittal also announced its plans to build an electric arc furnace at Calvert capable of producing 1.5 million metric tons of

steel slabs to feed its hot-rolling mills and supporting an additional 300 jobs. A definitive agreement with Nippon Steel for the $775 million investment was signed on December 22, 2020.

19. Defendant United States of America received payment of the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B), and is acting by and through the U.S. Department of Commerce.

## STANDING

20. Plaintiff has standing because it is "adversely affected or aggrieved by agency action within the meaning of" the Administrative Procedures Act ("APA"). 5 U.S.C. § 702; see also 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). The Department of Commerce's wrongful denial of Plaintiff's requests for exclusion from Section 232 tariffs adversely affected and aggrieved Plaintiff because it was required to pay such duties.

## TIMELINESS OF THIS ACTION

21. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). The instant action contests Commerce's denial of Plaintiff's requests for exclusion from the Section 232 tariffs. Commerce denied these requests through published decision memoranda. See, e.g., BIS-2018-0006-20601, BIS Decision Document – Steel Section 232 Remedy Exclusion Request, Exclusion Request Number BIS-2018-0006-20601. Plaintiff's claims accrued, at earliest, on April 24, 2019, when the Bureau of Industry and Security ("BIS"), a sub-agency of the U.S. Department of Commerce, published the first of its twelve decision memorandum denying Plaintiff's exclusion requests. See Table 1. The remaining eleven decision memoranda were published on May 8, 2019. See id.

This Summons and Complaint, therefore, are timely filed within the time specified in 28 U.S.C. § 2636(i), having been filed within two years of the publication of the decision memoranda.

## PROCEDURAL BACKGROUND

### A.     BIS's Exclusion Process

22.     Section 232 of the Trade Expansion Act of 1962 vests the President with authority to take action to address imports following an investigation by certain U.S. agencies that concludes that the imports in question are being brought into the United States "in such quantities or under such circumstances as to threaten to impair the national security."  19 U.S.C. § 1862(c)(1)(A).

23.     On March 18, 2018, following an investigation and report ("Section 232 report") that concluded that imports of steel threaten to impair the national security, President Trump, pursuant to Section 232, issued Proclamation 9705.  Proclamation 9705 imposed a 25 percent ad valorem tariff on imports of certain steel articles.  Although Canada and Mexico were initially excluded from those tariffs, the President subsequently issued Proclamation 9740, which extended the tariffs to steel imports from Canada and Mexico beginning June 1, 2018.  See Proclamation 9740, 83 Fed. Reg. 20,683, 20,684.

24.     Proclamation 9705 also directed the Secretary of Commerce to grant exclusions from these tariffs if the Secretary determined that any steel product for which an exclusion was requested was not "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality" or for steel articles that met "specific national security considerations." Proclamation 9705, 83 Fed. Reg. at 11, 627.

25.     On March 19, 2018, the Department, through BIS, issued an interim final rule, codified at 15 C.F.R. pt. 705, supp. 1, that set forth the circumstances in which Commerce would grant an exclusion request.  See Interim Rule, 83 Fed. Reg. at 12,106.  In addition to detailing procedural requirements for making an exclusion request, the Department also indicated that it

would grant a company's exclusion request if it met certain criteria. Specifically, the Department would grant a request if the Department determined that the steel article is not "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or based upon specific national security considerations." Id. at 12,110. Following a notice and comment period, on September 11, 2018, the Secretary supplemented the rules by further defining each of the criteria as well as establishing a rebuttal and surrebuttal process. See Revised Interim Rule, 83 Fed. Reg. at 46,026.

26. Commerce defined the first criterion, "not produced in the United States in a sufficient and reasonably available amount," to mean if:

> the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities.
>
> "Immediately" means whether the product is currently being produced or could be produced "within eight weeks" in the amount needed in the business activities of the user of steel in the United States described in the exclusion request.

Revised Interim Rule, 83 Fed. Reg. at 46,058; 15 C.F.R. pt. 705, supp. 1(c)(6)(i).

27. Commerce defined the second criterion, "not produced in the United States in a satisfactory quality," as follows:

> The exclusion criterion "not produced in the United States in a satisfactory quality" does not mean that the steel needs to be identical, but it does need to be equivalent as a substitute product. "Substitute product" for purposes of this review criterion means that the steel being produced by an objector can meet "immediately" . . . the quality (e.g. industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S. produced steel to be used in that business activity in the United States by that end user.

Revised Interim Rule, 83 Fed. Reg. at 46,058; 15 C.F.R. pt. 705, supp. 1(c)(6)(i).

28.    The Department's rule plainly places the burden on the objector to demonstrate that it can produce the "substitute product" within the requisite timeframe:

> The objection should clearly identify, and provide support for, its opposition to the proposed exclusion, with reference to the specific basis identified in, and the support for, the submitted exclusion request. If the objector is asserting that it is not currently producing the steel identified in an exclusion request but can produce the steel within eight weeks (meaning the objector meets the definition of being able to supply the steel "immediately" in order to meet the demand identified in the exclusion request), the objector must identify how it will be able to produce the article within eight weeks. This requirement includes specifying in writing to the U.S. Department of Commerce as part of the objection, the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting.

15 C.F.R. pt. 705, supp. 1(d)(4); see also Revised Interim Rule, 83 Fed. Reg. at 46,029 ("{I}f a U.S. supplier objects to an exclusion request, the burden is on that supplier to demonstrate that the exclusion should be denied because of failure to meet the specified criteria.").

29.    With regard to the third criterion, "for specific national security considerations," Commerce stated that this criterion:

> is intended to allow the U.S. Department of Commerce, in consultation with other parts of the U.S. Government as warranted, to make determinations whether a particular exclusion request should be approved based on specific national security considerations . . . The U.S. Department of Commerce, in consultation with the other parts of the U.S. Government as warranted can consider other impacts to U.S. national security that may result from not approving an exclusion.

Revised Interim Rule, 83 Fed. Reg. at 46,058; 15 C.F.R. pt. 705, supp. 1(c)(6)(iii).

**B.    Calvert's Exclusion Requests**

30.    Between June and July, 2018, Calvert filed twelve requests for exclusion from the Section 232 tariffs for imports of certain alloy and non-alloy steel slab from Mexico. See **Table 1** (summarizing Calvert's exclusion requests). Specifically, Calvert filed: (i) on June 18, 2018, six

exclusion requests for continuously cast alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling with a width at least four times the thickness and having specific dimensions; and (ii) on July 26, 2018 six exclusion requests for continuously cast non-alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling with a width at least four times the thickness and having specific dimensions.

31.     Calvert documented in its exclusion request filings its plans to source approximately 850,000 metric tons of slabs in 2018 and approximately 900,000 metric tons in 2019 from ArcelorMittal USA – a significant portion of Calvert's steel slab requirements. Although Calvert made every reasonable effort to purchase domestic steel slab from ArcelorMittal USA – its U.S. affiliate at that time –Calvert explained that it would require approximately 4 million additional tons of steel slabs per year to operate its facility at full-capacity. The exclusions requested on imports from Mexico were intended to meet a portion of those needs. Calvert further explained that all other potential domestic sources, including ArcelorMittal USA, captively consume slab for their own downstream production and, as a result, could not supply Calvert with steel slab in the quantity and quality required within the eight-week time period set forth in the regulations.

32.     Further, in support of the exclusion requests, Calvert also demonstrated that its position as a major producer of high-quality sheet and plate products used in the energy sector – a critical infrastructure industry mentioned in the Section 232 Report – warranted exclusion on national security grounds.

33.     Three U.S. industry members – AK Steel, Nucor, and U.S. Steel – objected to Calvert's exclusion requests. AK Steel and U.S. Steel raised largely identical arguments in each objection, claiming with little evidence, that they or other domestic producers could manufacture

the slabs in the quantity and quality required by Calvert within eight weeks or they could provide a sufficiently similar substitute product. The record evidence, however, contradicted those unfounded assertions and established that the objectors could not meet their burden to demonstrate that they could supply Calvert with the products for which exclusions were sought. Nucor admitted that it could not supply Calvert's needs but objected on "policy grounds" claiming it could produce downstream flat-rolled carbon and alloy steel products.

34. Although both AK Steel and U.S. Steel asserted that they were capable of supplying Calvert and all other domestic slab processors with their full slab requirements, both entities failed to substantiate that claim with record evidence. AK Steel indicated that it could produce the requested slab "immediately." As support, however, AK Steel merely stated that "{l}ead times vary," plainly failing to address the regulations' requirement that it be able to supply the requested slab within eight weeks. 15 C.F.R. Part 705, Supp. 1 at ¶ (c)(6)(i). In rebuttal, Calvert demonstrated that AK Steel failed to discharge its burden to demonstrate that the exclusion should be denied because of alleged failure to meet the specified criteria. See Revised Interim Rule, 83 Fed. Reg. at 46,029. Calvert further pointed to publicly available information, such as AK Steel's high capacity utilization rate, that undermined AK Steel's claim that it could supply Calvert with a sufficient quantity of slab.

35. U.S. Steel similarly stated it could meet "100 percent of the volume" identified in Calvert's requests citing to the company's recent and ongoing additions of raw steel capacity at its Granite City, Illinois blast furnace – a claim also made in objection to 441 other exclusion requests on slabs filed by Calvert and other domestic slab processors. This claim, however, was clearly wrong given that the Granite City facility only added 1.5 million tons of raw steel capacity in 2018, reportedly increasing capacity to 2.7 million tons by October 2018, whereas domestic slab rollers,

including Calvert, require 8.4 million tons of slab. In rebuttal comments, Calvert pointed out the mathematical impossibility that U.S. Steel's limited supply could meet demand. Calvert also noted, in rebuttal, that U.S. Steel failed to place on the record evidence demonstrating it could "immediately" supply steel processors – i.e., within 8 weeks.

36. Nucor admitted that it could only produce downstream products made from steel slabs – such as hot-rolled steel, cold-rolled steel, and galvanized steel. Calvert explained, in its rebuttal, that downstream products are not substitute products within the meaning of the regulations, namely "that the steel being produced by an objector can meet 'immediately' . . . the quality (e.g., industry specs or internal company quality controls or standards), regulatory or testing standards, in order for the U.S. produced steel to be used in that business activity in the United States for that end user." 15 C.F.R. Part 705, Supp. 1 at ¶ (c)(6)(ii); Interim Final Regulation, 83 Fed. Reg. at 46,058. Therefore, Nucor, like AK Steel and U.S. Steel, failed to discharge its burden that it could supply the requested slab.

37. Because record evidence demonstrated that the alloy and non-alloy steel slab – the subject of Calvert's exclusion requests – was not available domestically in a sufficient amount or of satisfactory quality, Commerce had no basis for denying Calvert's request. Indeed, consistent with Commerce's "guiding principle" that "if the U.S. domestic industry does not or will not produce a given steel . . . product of the quality needed by users in the United States, companies that rely on those products will not pay duties on them." See 15 C.F.R. pt. 705, supp. 1.

38. However, Commerce failed entirely to address the record evidence and issued boilerplate denials for each of Calvert's exclusion requests, devoid of explanation. For all twelve of the requests, Commerce concluded, without citing to record evidence provided by any party that

alloy and non-alloy slab was available domestically in a sufficient and reasonably available amount and of a sufficient quality. Commerce stated:

> In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA recommends finding, based on all of the evidence presented, that the produce referenced in the above-captioned exclusion request is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for an exclusion. BIS accepts ITA's recommended findings as to the domestic availability of the product, and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the domestic availability.

39. Commerce did not explain, repeat or otherwise provide for the record the ITA's reasoning, analysis or recommendations allegedly supporting denial of the exclusion requests. For two of the twelve requests, Commerce also wholesale adopted CBP's recommendation that the request was incomplete by reason of allegedly citing the incorrect HTSUS code based on the width and thickness combination of the products. Without any explanation of how Commerce reached its conclusions, and ignoring that the width and thickness ranges in the request produced combinations that fell within the cited HTSUS code, Commerce summarily (and incorrectly) found:

> the above-captioned request for relief ("exclusion request") has not met the requirements for consideration as a "complete submission" under paragraph (h) of Supplement No. 1 to 15 CFR Part 705. Customs and Border Protection has advised BIS that the product description is inconsistent with the claimed classification under the Harmonized Tariff Schedule of the United States ("HTSUS") providing the following guidance: The proportion between width and thickness in your request is inconsistent with the tariff provision claimed. See Chapter 72 of the Harmonized Tariff Schedule of the United States (HTSUS) at https://hts.usitc.gov/current.

40.     These rote bases for denying Calvert's exclusion requests are inconsistent with Commerce's regulations governing exclusion requests. The lack of explanation, analysis or any reference or citation to record evidence is, on its face, arbitrary and capricious.

41.     While the ITA's reasoning and analysis on which BIS states that it based its determinations was not further explained, Plaintiff has every reason to believe that the ITA analysis memoranda are equally devoid of analysis, verification or citation to facts in support of the conclusions reached in denying Plaintiff's exclusion requests. In a recent decision by this court involving similarly situated exclusion denials on slabs from Mexico, the court examined ITA analysis memoranda issued in approximately the same time period and found that "the ITA recommendation memoranda, which recommend to BIS whether to grant or deny an exclusion request, suffer from the same paucity of analysis as the BIS decision memoranda" and do "not explain what information the sub-agencies considered, how it was weighed, or why the evidence compelled denial." JSW Steel (USA) Inc. v. United States, Slip Op. 20-111, Ct. No. 19-00133 at 18, 20 (Ct. Int'l Trade July 11, 2020). There is no record evidence suggesting, and no reason to believe, that the ITA analysis memoranda for the exclusions at issue in this case are any more forthcoming than those found to be inadequate in the JSW Steel case.

42.     Further, the Department's failure to provide any analysis in denying Calvert's requests is consistent with the U.S. Government Accountability Office ("GAO") finding that during the relevant period applying to these exclusion requests the Department did not conduct any analysis or undertake any effort to verify objectors' claims that they could or would produce the products for which exclusions were sought. See GAO, Steel and Aluminum Tariffs, Commerce Should Improve Its Exclusion Request Process and Economic Impact Reviews at 22 (GAO-20-517 Sept. 2020). The Department also confirmed to the GAO that, despite the plain wording of

the Proclamation and the purpose of Section 232, it has never used the national security criterion to determine an exclusion request. Id. at 12, n.29, 18. The Department appears to have treated Plaintiff's requests consistent with this pattern – and inconsistently with the plain requirements of the regulations.

43. The Inspector General also identified at least the potential for improper influence in the exclusion request process and the appearance of impropriety presented by the Department's conduct. See Information Memorandum for Secretary Ross from Carol N. Rice, Assistant Inspector General for Audit and Evaluation, Management Alert: Certain Communications by Department Officials Suggest Improper Influence in the Section 232 Exclusion Request Review Process Final Memorandum No. OG-20-003-M (Oct. 28, 2019). According to the Inspector General:

> Department officials and interested parties have discussed information about pending exclusion requests that was not included in the official record. Following some of these off-record communications, Department officials took subsequent action consistent with such communications, giving the appearance that the Section 232 exclusion request review process is not transparent and that decisions are not rendered based on evidence contained in the record. Additionally, the Bureau of Industry and Security (BIS) changed an internal criterion used to review exclusion requests before posting them online at the request of an objector, creating the perception of undue influence.

See id.

44. It has also come to light, in cases filed by similarly situated plaintiffs, that there were extensive off-record discussions between the Department and objector companies in relation to the product exclusion requests, including exclusion requests for steel slabs from Mexico. Plaintiffs were offered no opportunity to review or comment on those communications. See, e.g. JSW Steel (USA) Inc. v. United States, Slip Op. 20-111, Ct. No. 19-00133 (Ct. Int'l Trade July 11, 2020); see also Borusan Mannesmann Pipe U.S., Inc. v. United States, Slip Op. 20-90, Ct. No.

20-00012 (Ct. Int'l Trade June 25, 2020).  Nor is it clear that the Department included any such comments or communications in the record on which the ITA and BIS based their analyses and conclusions in this case.  In both the JSW Steel and Borusan cases, the Court remanded to the Department similarly situated exclusion request denials in order to supplement the record with such ex parte and extra record communications that may have been relevant to those determinations.  JSW Steel (USA) Inc. v. United States, Slip Op. 20-111, Ct. No. 19-00133 at 23-25 (Ct. Int'l Trade July 11, 2020); Borusan Mannesmann Pipe U.S., Inc. v. United States, Slip Op. 20-90, Ct. No. 20-00012 at 12 (Ct. Int'l Trade June 25, 2020).

45.　　Taken together, the GAO Report, the Inspector General's observations, and the ex parte communications brought to light so far in other proceedings corroborate what is evident from the Department's determinations – the Department's decisions as to Calvert's exclusion requests were not based on any reasoned analysis of the actual record evidence regarding the exclusion requests.

## COUNT I

(Administrative Procedure Act (5 U.S.C. §§ 701-706))

46.　　Paragraphs 1 through 45 above are re-alleged and incorporated herein by reference.

47.　　The Administrative Procedure Act authorizes the Court to hold unlawful and set aside agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; {or} (E) unsupported by substantial evidence."  5 U.S.C. § 706(2).

48.　　The Department's finding that the products subject to Calvert's exclusion requests were "produced in the United States in a sufficient and reasonably available amount and of a

satisfactory quality," and subsequent denial of Calvert's requests for exclusion from the Section 232 tariffs on steel was arbitrary and capricious because the Department (1) failed to meaningfully consider relevant factors when making its determinations, (2) failed to adequately explain the basis for its determinations, and (3) failed to meaningfully consider the evidence before it.

49. The Department's failure to "observe{ } procedure required by law" resulted in the unlawful imposition of Section 232 tariffs on Calvert's imports and thus must be held "unlawful and set aside" by this Court. 5 U.S.C. § 706(2).

## COUNT II

(Administrative Procedure Act (5 U.S.C. §§ 701-706))

50. Paragraphs 1 through 45 above are re-alleged and incorporated herein by reference.

51. In finding that there were no specific national security concerns that mandated BIS to grant Calvert's exclusion requests, the Department (1) failed to meaningfully consider relevant factors when making its determinations, (2) failed to adequately explain the basis for its determinations, and (3) failed to meaningfully consider the evidence before it.

52. These unlawful determinations resulted in Section 232 tariffs being unlawfully collected on Calvert's imports, and these determinations must therefore be set aside. 5 U.S.C. § 706.

## COUNT III

(Administrative Procedure Act (5 U.S.C. §§ 701-706))

53. Paragraphs 1 through 45 above are re-alleged and incorporated herein by reference.

54. The Department's denial of certain exclusion requests based on a determination that the requests were "incomplete" because the products' specifications were allegedly inconsistent with the HTSUS provision under which the exclusion was sought is legally irrelevant to whether Calvert qualified for the exclusions sought, is unsupported by the record, and

Commerce's denial of the exclusions on that basis was therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     Enter judgment that the Department of Commerce's denials of Plaintiff's exclusion requests were arbitrary and capricious or otherwise unlawful in violation of the APA (5 U.S.C. §§ 701 et seq.);

(2)     Declare that Plaintiff was entitled to the exclusions from the Section 232 tariffs, in accordance with Proclamation 9705 and 15 C.F.R. pt. 705, supp. 1, and order that the U.S. Department of Commerce instruct U.S. Customs and Border Protection to refund the Section 232 tariffs paid by Plaintiff;

(3)     Alternatively, remand the matter to the Department of Commerce for proper treatment and consideration in accordance with the requirements of the APA; and

(4)     Grant Plaintiff such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ R. Alan Luberda
PAUL C. ROSENTHAL
R. ALAN LUBERDA
JOSHUA MOREY
JULIA A. KUELZOW
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Plaintiff

Dated:  January 8, 2021

**Table 1.**

| Request Number | Product Category | Product Description | HTSUS | Country of Origin | Quantity (kg) |
|---|---|---|---|---|---|
| BIS-2018-0006-20588 | Carbon and Alloy Semi-Finished | Continuously cast alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1000 mm to 1140 mm wide, 215 mm to 260 mm thick, and containing by weight the proportion shown for the elements listed in 3.a. regardless of the level of other elements. | 7224900055 | Mexico | 38,092,000 |
| BIS-2018-0006-20594 | Carbon and Alloy Semi-Finshed | Continuously cast alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1141 mm to 1290 mm wide, 215 mm to 260 mm thick, and containing by weight the proportion shown for the elements listed in 3.a. regardless of the level of other elements. | 7224900055 | Mexico | 43,758,000 |
| BIS-2018-0006-20601 | Carbon and Alloy Semi-Finished | Continuously cast alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1291 mm to 1445 mm wide, 215 mm to 260 mm thick, and containing by weight the proportion shown for the elements listed in 3.a. regardless of the level of other elements. | 7224900055 | Mexico | 43,282,000 |
| BIS-2018-0006-20609 | Carbon and Alloy Semi-Finished | Continuously cast alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1446 mm to 1595 mm wide, 215 mm to 260 mm thick, and containing by weight the proportion shown for the elements listed in 3.a. regardless of the level of other elements. | 7224900055 | Mexico | 32,476,000 |
| BIS-2018-0006-20613 | Carbon and Alloy Semi-Finished | Continuously cast alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1596 mm to 1750 mm wide, 215 mm to 260 mm thick, and | 7224900055 | Mexico | 37,991,000 |

| | | containing by weight the proportion shown for the elements listed in 3.a. regardless of the level of other elements. | | | |
|---|---|---|---|---|---|
| BIS-2018-0006-20619 | Carbon and Alloy Semi-Finished | Continuously cast alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1751 mm to 1940 mm wide, 215 mm to 260 mm thick, and containing by weight the proportion shown for the elements listed in 3.a. regardless of the level of other elements. | 7224900055 | Mexico | 89,845,000 |
| BIS-2018-0006-29409 | Carbon and Alloy Semi-Finished | Continuously cast non-alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1000 mm to 1140 mm wide, 215 mm to 260 mm thick, containing by weight less than 0.25 percent carbon, and containing by weight the proportion shown for the elements listed in 3.a. | 7207120050 | Mexico | 12,548,000 |
| BIS-2018-0006-29410 | Carbon and Alloy Semi-Finished | Continuously cast non-alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1141 mm to 1290 mm wide, 215 mm to 260 mm thick, containing by weigh tless than 0.25 percent carbon, and containing by weight the proportion shown for the elements listed in 3.a. | 7207120050 | Mexico | 195,200,000 |
| BIS-2018-0006-29411 | Carbon and Alloy Semi-Finished | Continuously cast non-alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1291 mm to 1445 mm wide, 215 mm to 260 mm thick, containing by weight less than 0.25 percent carbon, and containing by weight the proportion shown for the elements listed in 3.a. | 7207120050 | Mexico | 71,868,000 |
| BIS-2018-0006-29413 | Carbon and Alloy Semi-Finished | Continuously cast non-alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1446 mm to 1595 mm wide, 215 mm to 260 mm thick, | 7207120050 | Mexico | 70,444,000 |

| | | containing by weight less than  0.25 percent carbon, and containing by weight the proportion shown for the elements listed in 3.a. | | | |
|---|---|---|---|---|---|
| BIS-2018-0006-29415 | Carbon and Alloy Semi-Finished | Continuously cast non-alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1596 mm to 1750 mm wide, 215 mm to 260 mm thick, containing by weight less than  0.25 percent carbon, and containing by weight the proportion shown for the elements listed in 3.a. | 7207120050 | Mexico | 39,287,000 |
| BIS-2018-0006-29417 | Carbon and Alloy Semi-Finished | Continuously cast non-alloy steel slabs of solid rectangular cross-section, subject to no more than primary hot-rolling, with a width at least four times the thickness and measuring 1751 mm to 1940 mm wide, 215 mm to 260 mm thick, containing by weight less than  0.25 percent carbon, and containing by weight the proportion shown for the elements listed in 3.a. | 7207120050 | Mexico | 80,125,000 |